**THE JUDSON PALMER HOME, Application of In Re.**

Board of Tax Appeals.

No. 9587.   Decided July 25, 1945.

268

Harley A. Watkins, Toledo, on behalf of the applicant.

Joe M. Moorehead, Prosecuting Atty. of Hancock county, Findlay, on behalf on the county auditor.

Hon. Hugh S. Jenkins, Atty. Genl. of Ohio, Columbus, and Daronne R. Tate, Assist. Atty. Genl., Columbus, on behalf of the tax commissioner of Ohio.

**ENTRY**

This cause and matter came on to be heard and considered by the Board of Tax Appeals on an application filed herein under date of December 26, 1944, for the consent of the Board to the exemption from taxation of certain intangible property consisting of stocks, bonds and other securities of the amount and value of $292,416.75 which were owned and held on and as of tax listing day in said year by The Judson Palmer Home, a corporation for charitable uses incorporated and organized under the provisions of §10085 et seq., GC, pursuant to the directions of the last will and testament of Katharine L. Palmer, deceased. The case was heard by the Board upon said application, upon the evidence offered and introduced on the hearing thereof and upon the arguments of counsel.

Upon consideration of the case as thus submitted, the Board of Tax Appeals finds that sometime late in the year 1939 Katharine L. Palmer, late of Findlay, Ohio, died testate; and by her last will and testament she devised and bequeathed her residuary estate to her executors therein named for the purpose of providing for and maintaining a home for worthy aged and indigent women, residents of Hancock County, Ohio, through the agency of a corporation to be incorporated and organized under the authority of the sections of the General Code above referred to and under the name "The Judson Palmer Home". Thereafter on or about October 11, 1940, a corporation was incorporated and organized for this purpose under the name above noted; and as a consideration pertinent to the question presented to the Board on this application for tax exemption, it is noted that the purpose clause in the Articles of Incorporation of this corporation reads as follows:

"The purposes for which this corporation is formed are: (a) To administer, execute and carry out in perpetuity the terms and provisions of a certain charitable trust created by, provided for in, and solely for the charitable and public uses and purposes set forth in the Last Will and Testament of Katharine L. Palmer, deceased, which was duly proven in and admitted to probate and record by the Probate Court of Hancock County, Ohio, on or about the 22nd day of December, 1939, and recorded in Volume 26 of Wills Records, page 523, a copy of which Last Will and Testament and the Codicils thereto are as follows, to-wit:

"(Here is incorporated a true and correct copy of said Last Will and Testament of Katharine L. Palmer, deceased.)

"(b) To acquire, erect, own, establish, conduct, provide, furnish, operate, manage, regulate, and maintain in perpetuity a Home for worthy, aged and indigent women residents of Hancock County, Ohio, and to provide, furnish and pay for such medical services and attention as are determined to be required by such female persons as are admitted to said Home, and to provide, furnish and pay for such burial services as it is determined are proper for such female persons as die while residents in said Home, pursuant to and in accordance with such organic rules, by-laws and regulations as the Board of Trustees of this corporation shall promulgate and adopt pursuant to and in accordance with, and solely for the charitable and public uses and purposes set forth in said Last Will and Testament of Katharine L. Palmer, deceased, and the laws of the State of Ohio.

"(c) To accept, receive, own, control, hold, manage, invest and re-invest any and all gifts, devises or bequests of real or personal property, and to apply and administer the same according to the terms, conditions and provisions of, and solely for the charitable and public uses and purposes set forth in said Last Will and Testament of Katharine L. Palmer, deceased.

"(d) To acquire, purchase, own, hold, receive, accept, maintain, operate, manage, improve, mortgage, pledge, sell, lease, rent, dispose of, exchange, transfer, invest, re-invest, and in any manner whatsoever contract with respect to real or personal property, or any interest therein, whether the same be situated within or without the State of Ohio, for the sole and exclusive charitable and public uses and purposes of the corporation.

"(e) To invest and re-invest the property and funds coming into or at any time held by the corporation for its

charitable and public uses and purposes, in whatever investment or property a majority of the Board of Trustees, in the exercise of their bona fide judgment and discretion, determine.

"(f) To have, be invested with and exercise in perpetuity all the power and authority conferred by the laws of the State of Ohio upon charitable and public use and purpose corporations organized not for profit, whether or not said power and authority is herein specifically set forth, but without limitation on the power and authority herein specifically granted."

After the incorporation and organization of The Judson Palmer Home all of the property above noted, which was comprised in the residuary estate of Katharine L. Palmer and which was devised and bequeathed to the executors of her estate, was transferred in kind to this corporation which thereafter owned and held the same. One of the residence properties which thus came into the ownership and possession of The Judson Palmer Home for the purpose above stated was the residence owned and occupied by Katharine L. Palmer at the time of her death; which property was located in one of the more pretentious residence districts in the City of Findlay. Although under the last will and testament of Katharine L. Palmer this residence building and property could have been used by the trustees of this corporation as a home for worthy, needy and indigent women of the county in carrying out the declared purposes of Mrs. Palmer's last will and testament, this property was not so used, but was sold for use as a private residence; and the proceeds of such sale were placed in the treasury of the corporation for the general purposes of the trust. Thereafter sometime in the year 1943 The Judson Palmer Home acting through its trustees and officers, purchased a property on North Main Street in the City of Findlay, Ohio, as a site for the erection and construction of a building which was to serve as an old ladies' home in keeping with the purposes indicated in Mrs. Palmer's last will and testament. Although plans and specifications for this proposed building have been made, which plans and specifications indicate that the building to be erected will house about twenty-five women, nothing further has been done in connection with the erection and construction of the building; and apparently nothing can or will be done until after the war or until priority releases have been secured with respect to the materials necessary in the construction of the building. It appears, therefore, in this connection that al-

though this corporation was incorporated and organized for the purpose of carrying out the charitable trust provided for in Mrs. Palmer's last will and testament, and although the property here in question, as well as the real property and tangible personal property which passed to the corporation, is held and invested by it with the ultimate purpose of using this property in the construction and maintenance of such home when this purpose can be realized, no charity of this or any other kind has yet been dispensed either by the executors or by the corporation, as the owner of this property.

In this situation as to the facts of the case, The Judson Palmer Home filed with the Board of Tax Appeals the application for tax exemption above referred to. No request is made in this application for the exemption from taxation of the real and tangible personal property owned and held by it for the purposes of said trust; but, as above noted, this application is limited to the intangible property owned and held by it, as aforesaid, for the tax year 1944 and as of tax listing day in said year. This application is on the stated ground that the property in question is that of an institution used exclusively for charitable purposes within the provisions of §5353 GC. As to this it may be conceded that The Judson Palmer Home, a corporation incorporated and organized for the specific purpose of administering the trust provided for in the last will and testament of Katharine L. Palmer, is a charitable institution within the meaning of the term as the same is used in the applicable provisions of **Sec. 2 of Art. XII of the State Constitution** and of §5353 GC. See **Myers, Treas., v Rose Institute, 92 Oh St 238, 242, 243; Jones, Treas., v Conn, 116 Oh St 1, 9; Wehrle Foundation v Evatt, Tax Commr., 141 Oh St 467.** As to this it is pertinent to note, however, that the Supreme Court in the case last above cited, held:

"While **Sec. 2 of Art. XII of the Constitution** authorizes the General Assembly to exempt institutions used exclusively for charitable purposes, such provision is not self-executing. The extent to which the General Assembly has acted under such authorization is to exempt property belonging to an institution provided such property is used exclusively for charitable purposes."

Touching the question as to whether the property described in this application can be said to be property used exclusively for charitable purposes within the meaning of §5353 GC, it is noted that the Supreme Court in the case of **Rose Institute v Myers, Treas., 92 Oh St 252,** held as follows:

"The real estate belonging to an institution of purely public charity is exempt from taxation only when used exclusively for charitable purposes, and if such real estate is rented for commercial and residential purposes it is not exempt, although the income arising from such use is devoted wholly to the purpose of the charity."

The decision of the Court in the case of Rose Institute v Myers, Treas., just noted, was apparently controlled by the earlier provisions of **Sec. 2 of Art. XII of the State Constitution** and of statutory enactments pursuant thereto. However, in the recent case of **Incorporated Trustees of the Gospel Workers' Society v Evatt, Tax Commr., 140 Oh St 185,** the Supreme Court construing and applying the present applicable provisions of **Sec. 2 of Art. XII, Constitution of Ohio** and §5353 GC, held:

"Under **Sec. 2 of Art. XII, Constitution of Ohio,** and §5353 **GC,** property which is used to produce income to be used exclusively for charitable purposes may not be exempted from taxation. The test is the present use of the property rather than the ultimate use of the proceeds received from the property sought to be exempted."

Among other decisions emphasizing the rule that it is the use of property exclusively for charitable purposes, and not the use of the income of such property for charitable purposes, which entitled the property to exemption from taxation, are the decisions rendered in the cases of Jones, Treas., v. Conn and Wehrle Foundation v Evatt, supra. In our opinion the decision of the Supreme Court in the case of Jones, Treas., v. Conn, supra, is clearly dispositive of the question presented on the application for tax exemption now before this Board. In that case, as in this, the question involved was as to the liability of property for taxes or as to its exemption therefrom where such property was owned and held for purposes of the trust prior to the time when any of such property was being used for the purpose of dispensing the charity provided for by the trust. The property in question in the cited case was that held by Conn et al. as trustees of the Marsh Foundation, so-called, provided for by the last will and testament of George H. Marsh, deceased, for the purpose of erecting and maintaining a home for orphan and other children from Van Wert County and other counties in northwestern Ohio. The taxes involved were those on the property for the tax years 1922 and 1923, which taxes accrued sometime after

Sec. 2 of Art. XII of the State Constitution was amended to exempt institutions "used exclusively for charitable purposes" and before §5353 GC, was amended in its present form, and while this section provided in this connection that "property belonging to institutions of public charity only, shall be exempt from taxation." The question presented to the Court in that case is stated in the Court's opinion as follows:

"There is no contention as to the fact that the will provides for a purely public charity. There is no contention as to the fact that the trustees proceeded with the utmost and with most commendable diligence to organize the trust for the public charity, to conserve its property, to safeguard and increase its income, and to prosecute the work preliminary to the dispensation of the charity. The conflict arises over the question whether the personal property belonging to the trust estate is taxable for the years 1922 and 1923, after the trustees took over the estate and during the period before any charity was being dispensed."

Reading the provisions of §5353 GC, (and §5353-1 GC), in the light of the then and now existing constitutional provision above noted, the Court held:

"Under Sec. 2 of Art. XII of the Constitution of Ohio, in its present form, the personal property belonging to an institution of public charity is exempt from taxation only when used exclusively for charitable purposes, and, if such personal property is invested for financial purposes during the period before the charity was being dispensed by the institution, it is not exempt from taxation during such period. (Rose Institute v Myers, Treas., 92 Ohio St., 252, 110 N. E., 924, L. R. A., 1916D, 1170, and State, ex rel. Boss, v Hess, Aud., 113 Ohio St., 52, 148 N. E., 347 approved and followed.)"

We are of the opinion that the decision of the Supreme Court in the case of Jones Treas., v. Conn is directly applicable to the case presented to the Board on the application for tax exemption filed by The Judson Palmer Home. And upon the considerations above noted it is by the Board of Tax Appeals ordered and directed that said application for tax exemption be, and the same hereby is, denied.